Curia, per
Evans, J.
To the proper understanding of the views which I propose to submit on this case, it will be necessary to bear in mind that the question between these parties is, whether a certain judgment, confessed by Henning to McBee, be without consideration and fraudulent, as to these plaintiffs, who are junior creditors. If a stranger had heard the argument, without having read the brief, he would have supposed the sole question was as to the validity of a certain deed, absolute originally, but afterwards converted into a mortgage, by a defeasance on the back of it: whereas, the validity of this paper is no otherwise important than as it goes to shew the consideration of the judgment, and to rebut any argument of fraud arising out of the facts of the case. Such a stranger, if he were familiar with legal principles, might have been startled at the idea, that a deed absolute on its face had been converted into and set up as a mortgage by parol evidence in a court of law; whereas, the change in the instrument had been in writing, by the parties themselves, and the evidence was admitted for no other purpose .than to shew that, in so doing, they had acted bona fide, and in pursuance of a contract (by parol) between the parties, made fourteen years before, when Henning, so far as appeared, was free from debt, and when there could not have existed any design to defraud these plaintiffs, whose debts had all been contracted within 4 years. The plaintiffs, in order to attack the consideration of the judgment, served McBee with a notice to produce his deed. It was accordingly produced, and offered in evidence by them. It was dated in 1824, with a defea *201 sanee endorsed in 1839, declaring it to be a mortgage to secure the payment of money. As a deed, it was liable to exceptions, which it was supposed would not apply to it as a mortgage ; among others, that Henning had remained in possession, which, to a deed, being inconsistent with the title, and unexplained, might be a fatal objection ; but if it was a mortgage, this objection could not apply, as by our law the mortgagor is the owner of the land, and the possession of Henning would not have been inconsistent with the title. Hence the inference that this was an attempt to give effect to the paper as a mortgage, which might be void as a deed absolute ; and hence the necessity the defendant McBee was under to shew that this was bona fide, being in pursuance of the original understanding, and not a new-hatched scheme to defraud Henning’s creditors. In this point of view, it seems to me, the evidence was wholly unexceptionable.
Having thus disposed of this preliminary question, I will proceed to consider the questions made in the brief and the argument. Before doing this, I take occasion to say, that until this deed was changed into a mortgage,- (which I shall hereafter attempt to shew the parties might do, bona fide,) it was liable to all the exceptions which usually apply to deeds. It would, if not recorded, be postponed, according to the Act of 1785, in favor of purchasers and such creditors as come within the provisions of that Act. 2d. If there was any fraudulent design to cheat, hinder or delay creditors, of which the secrecy observed in relation to the deed, and Henning’s remaining in possession, if unexplained, are evidences, it would be wholly void; and if void for fraud, it was wholly vitiated, and could not be the consideration of any new act of the parties, to give it effect. With this admission, I proceed now to enquire what are the facts, as settled by the verdict of the jury, and what are the legal principles upon which the judgment of the court is to be pronounced. From the brief, I think it clear the jury have decided these two facts: lrt, that the debt of $5,000, which was the consideration of the deed, was bona fide due by Henning to McBee, when the deed was executed in 1824. 2d, that no conclusion of fraudulent intent' is to be drawn from Henning’s remaining in possession, or from the secre *202 cy of the transaction. The case, then, stands thus: In 1824, Henning owed McBee $5,000. To secure the payment, or in satisfaction of it, he executed an absolute deed for certain lands. This deed, I assume, because the jury have so found, is unimpeachable on the ground of fraud. In 1839, McBee, in pursuance of an agreement cotempoxaneous with the deed, executed a defeasance on the back of it, declaring it to be a mortgage to secure the payment of $5,000, the consideration expressed in the deed; and at or about the same time, Henning-gave McBee a bond for $5,000, and confessed a judgment for that sum. Now, is there any thing in the law of the land which will vacate the judgment in favor of the plaintiffs ? I suppose it will hardly be questioned, that parties may vacate, alter or modify their contracts at pleasure, and that such rescission, alteration or modification would be binding upon themselves, if done according to the forms of law. Nor do I suppose it will be doubted, that if it was the. understanding of the parties that the deed was a security for the payment of money, they might carry out that intention by an endorsement upon it to that effect. If Henning had filed his bill, alleging that fact, and McBee’s answer had confessed it, would it not have been decreed in equity? And why may not the parties do that by their own act which equity would have decreed to be done? Indeed, this is so obvious, that it was conceded by one of the counsel, that as between themselves, Henning and McBee might change the instrument as they have done. Who, then, has a right to complain? The plaintiffs, unquestionably, if there was fraud, or they had been hindered or delayed by it. But the question of fraudrdent intent has been settled by the jury, and it is very manifest from the evidence, that the converting of this absolute deed into a mortgage, increased the general fund of Henning’s assets liable to his creditors, and the plaintiffs among them.
But there is another objection, which is not so free from difficulty, which I proceed to consider: it is that this deed, being absolute oh the face of it, extinguished the debt. This, according to the view which I take of the case, may be conceded. The debt was extinguished, but what was there to prevent the revival of it ? Why could not Hen *203 ning buy back the land, and give a confession of judgment for the price, or McBee consent, in consideration of a bond and confession of judgment, to convert a deed absolute into a deed conditional or mortgage ? Such contract would be good between themselves, and the creditors could not impeach it for fraud, where none is intended or effected. A debt is extinguished in law when it is paid, or some equivalent has been accepted in satisfaction; but if that which has been accepted in satisfaction should fail, may .not the parties revive the debt'? Suppose the deed had been void for the want of two witnesses, the purchaser might not be able to recover his money back in a court of law, although equity might compel the execution of a sufficient deed; but could not the parties rescind the contract, and would not the confession of a judgment be binding on all 1 Suppose a purchaser, by inadvertence or ignorance, should omit to record his deed, and thereby it should become void as to a subsequent purchaser or creditor, and he has received ‘no equivalent for the money he paid, or the debt he cancelled. In such case, if set aside on account of a subsequent purchaser, the seller has received the price twice, and ought to refund ; if set aside in favor of creditors, he may also have the benefit of it again, by the application of it to his debts. In such case, there would be no legal obligation on the seller to pay; neither is there any obligation on the part of an infant to pay his bond, or a feme sole to pay a debt contracted whilst she was covert, or of a debtor to pay a debt barred by the statute of limitations; yet, if the infant, after he is of age, or the woman, after she is sole, or the debtor whose debt is barred, confess a judgment for what they owe in conscience, can another creditor come in and set aside the judgment, on the ground that the debt is not one of legal, but only of moral, obligation 1 Such a distinction, I am sure, is no where to be found.
It will be perceived, that in the course of this discussion, I have treated the question of fraud as one belonging to, and as having been decided by, the jury. By the common law, fraud was a thing to be proved, and by the statutes of Elizabeth it is made a question of intention. The intent with which an act is done, is to be gathered from all the circumstances and facts, by the jury. I very well know *204 that there are cases where the courts have said that the existence of certain facts, when proved, make a case of fraud which cannot be explained away; but those cases are few in number, and it is not the inclination of the courts at this day to enlarge them. So far as they go, I subscribe to them, but am not disposed to go beyond them. It may be that the prominent facts in this case, presented as they are in the last ground in the brief, and presented in strong relief as they were at the argument, are calculated to excite a suspicion that the existence and nature of Henning’s deed to McBee had been kept secret for the purpose of giving to Henning a more extensive credit, and that some of these plaintiffs may have been seduced into a credit of Henning on the faith of this property: yet when these prominent facts were connected with the other circumstances of the case, as proved on the trial, they made no such impression on my mind. I am, therefore, satisfied with the verdict on the facts, and I do not perceive, on a careiul review, any error in my first impressions of the law as applicable to the case. I am of opinion the verdict should stand ; and a majority of the court concurring in this opinion, the motion is dismissed.
Johnson and Johnston, CC., and Richardson, J. concurred.